UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AVANT GARDNER, LLC,

                Plaintiff,

        v.

MANHATTAN MIRAGE, INC. and LORENZO
P. ANDERSON A/K/A LP ANDERSON,

                Defendants.
----------------------------------------------------------X

Civil Action No.: 7:25-cv-948

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Avant Gardner, LLC ("Plaintiff"), by and through its attorneys, Adelman Matz P.C., as and for its Complaint against Defendants Manhattan Mirage, Inc. ("Manhattan Mirage") and Lorenzo P. Anderson a/k/a LP Anderson ("Anderson") (collectively "Defendants"), alleges as follows:

**NATURE OF THE CASE**

1. This is an action at law and in equity for trademark dilution and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§1117 and 1125(a) and (d) *et seq.*, ("Lanham Act") and for related claims of infringement, dilution, and unfair competition under the statutory and common law of New York.

2. Plaintiff seeks injunctive relief to prevent Defendants from using a name substantially similar to Plaintiff's trademarked name, The Brooklyn Mirage, ("Plaintiff's Mark") in any way so as to prevent consumer confusion and further seeks to obtain compensatory, treble and punitive damages and attorneys' fees resulting from Defendants' infringing use of a confusingly similar mark to Plaintiff's Mark, which has caused irreparable harm to the Plaintiff.

3. Despite Defendants having long been aware of Plaintiff's rights in and to Plaintiff's trademarks, in an apparent attempt to copy Plaintiff's mark and tread on the goodwill associated

1

therewith, Defendants have infringed on Plaintiff's trademark to pass itself off as Plaintiff and/or being associated with Plaintiff, and to create market confusion that siphons off Plaintiff's customers thereby diluting the valuable brand that Plaintiff has developed. Defendants have committed trademark infringement by deliberately using a substantially identical mark to impersonate Plaintiff for their commercial benefit and through their brazen use of a confusingly similar mark to Plaintiff's Mark as the name of their business, as well as in the domain name for Manhattan Mirage's website.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338(a) and 1338(b).

5. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c) in that a substantial part of the events giving rise to the claim occurred in this district and Defendants' principal place of business is in New York. Therefore, Defendants are subject to the Court's personal jurisdiction.

## NATURE OF THE PARTIES

6. At all relevant times mentioned herein, Plaintiff is a Limited Liability Company duly organized and existing under the laws of New York, with a principal place of business at 140 Stewart Avenue, Brooklyn, New York 11237.

7. Upon information and belief, at all relevant times mentioned herein, Manhattan Mirage is a Corporation duly organized and existing under the laws of New York, with a principal place of business at 265 West 37th Street, Unit 16-E, New York, New York 10018.

8. Upon information and belief, at all relevant times mentioned herein, Anderson is an individual residing in the state of New York, with an address at 265 West 37th Street, New York, New York 10018.

## FACTUAL BACKGROUND

**Plaintiff's Mark**

9. Plaintiff operates an 80,000 square foot, indoor/outdoor complex that spans an entire city block in East Williamsburg. It is a one-of-a-kind gem that includes The Brooklyn Mirage, The Great Hall, and The Kings Hall — all serving as individual event spaces or combined to make Plaintiff the second largest entertainment venue in Brooklyn.

10. The Brooklyn Mirage ("Brooklyn Mirage") is a breathtaking open-air sanctuary in the heart of the Plaintiff's complex. The inner courtyard is a totally immersive space, surrounded by towering walls lined with evergreen plants and a captivating 200-foot LED wall. A singular catwalk connects a network of expansive outdoor environments and rises to surround the venue, offering views of the iconic city skyline and bustling courtyard below. An exciting selection of refreshments, an ever-changing food menu and a stunning sound system complete this elusive summer paradise.

11. Since 2015, Plaintiff has used the Plaintiff's Mark as the name of their venue and hosted various events with world renowned brands and electronic music artists. Brooklyn Mirage quickly established itself as a summer sanctuary for electronic music enthusiasts.

12. Over the years, Brooklyn Mirage expanded, and eventually became an iconic entity amongst the live music industry with its 360-degree open-air concept and unrivaled production. Brooklyn Mirage's customers have come to associate the Plaintiff's Mark with the ultimate live

3

music experience, including top of the line production and the world's most popular electronic music artists.

13. Indeed, Plaintiff regularly hosts the most successful and renowned electronic music artists, including Tiesto, Diplo, Deadmau5, Kaytranada, MK, Purple Disco Machine, Bob Moses, Fisher, Camelphat, Yolanda Be Cool, Bob Mozes, James Hype, John Summit, Louis the Child, Steve Angello, Gorgon City, Thundercat!, Black Coffee, Arizona, Hook N Sling, Pretty Lights, Kim Petras, and Quinn XCII. These artists regularly sell out shows at the Brooklyn Mirage, which has a capacity of six thousand (6,000) people. Artists typically add additional concerts due to overwhelming demand. Plaintiff uses the Plaintiff's Mark in advertisements for their live events.

14. Brooklyn Mirage has been written up several times by the biggest trade magazines and online blogs. For instance, following the success of Plaintiff's 2022 season, it was named North America's Best Large Club by DJ Magazine. More recently, DJ Magazine rated Plaintiff and Brooklyn Mirage the 22nd best club in the world, getting as high as 8th on the list in 2023.

15. Magazines and blogs such as Dancingastronaut.com, edmjunkies.com, cultr.com, technoedm.com, EDMTunes.com, bizbash.com and popdust.com frequently write reviews about concerts held at the Brooklyn Mirage, as well as about the Brooklyn Mirage venue itself.

16. Plaintiff's Instagram account @avantgardnerbk—where it advertises and promotes its goods and services using Plaintiff's Mark and merchandise—has grown to have one hundred and nineteen (119,000) thousand followers. Additionally, Plaintiff's Instagram account @brooklynmirage—where it also advertises promotes its goods and services using the Plaintiff's Mark—has grown to have three hundred and ten (310,000) thousand followers. Further, Plaintiff's Facebook account at https://www.facebook.com/BrooklynMirage/ has over ninety thousand

4

(90,000) followers (the Instagram and Facebook accounts collectively, the "Brooklyn Mirage Social Media Profiles").

17. Since July 12, 2007, Plaintiff has owned and operated the website [www.avant-gardner.com/the-brooklyn-mirage](www.avant-gardner.com/the-brooklyn-mirage) ("Website"), and the brand has developed a wide and loyal customer base. Plaintiff includes the Plaintiff's Mark in the domain name of its website, as shown below. Annexed hereto as **Exhibit A** are true and correct screenshots of the Brooklyn Mirage Services on the Brooklyn Mirage Website and the Brooklyn Mirage Social Media Profiles.

18. Since 2015, Plaintiff has also used the Plaintiff's Mark on merchandise, including on t-shirts and hats, which Plaintiff sells to consumers at their events as well as on their website, as shown below.



19. Plaintiff has been continuously and exclusively using the Plaintiff's Mark in commerce since at least 2015 by virtue of using the Plaintiff's Mark in connection with the advertising and selling of its entertainment services and merchandise. As such, Plaintiff's goods and services have become increasingly well-known in the night-life industry and to consumers.

20. Through Plaintiff's exclusive use of the Plaintiff's Mark in, *inter alia*, organizing and promoting live events at its venue and selling merchandise, Plaintiff has invested substantial time, money, resources, and hard work to ensure that consumers come to associate the Plaintiff's Mark with offering high quality goods and services to its customers. As such, Plaintiff's brand has and continues to grow in prosperity, respect, and recognition, and has established substantial goodwill in New York and around the country in the Plaintiff's Mark.

21. By virtue of Plaintiff's extended and exclusive use of the Plaintiff's Mark since 2015, Plaintiff has acquired exclusive rights in and to its trademarks and the exclusive right to use the Plaintiff's Mark in interstate commerce.

**Defendants' Infringement**

22. Upon information and belief, defendant Manhattan Mirage is an event venue that hosts private parties, receptions, film screenings, and other events.

23. Defendants are actively using the name "The Manhattan Mirage" (the "Infringing Mark") as the name of the venue. Defendants use the Infringing Mark in connection with a venue for hosting live events, including live production of music. Annexed hereto as **Exhibit B** are true and correct screenshots of the Infringing Mark on Defendants' website.

24. The Infringing Mark is substantially similar to Plaintiff's Mark, and only replaces Brooklyn with Manhattan, as a reference to the location of the respective venues. Otherwise, both Plaintiff and Defendants provide identical services, i.e., hosting live music and entertainment events, and promote their services to similar consumers. Furthermore, Defendants are hosting live music events in the same music genres (electronic/house/techno/DJ sets) customarily associated with the Brooklyn Mirage. As such, consumers of Plaintiff could erroneously associate

Defendants' services with Plaintiff's services, when in fact there is no such association between the parties.

25. Indeed, the use of the Infringing Mark, which is substantially similar to Plaintiff's Mark, is likely to cause the consumers to confusingly believe that Plaintiff has opened up another venue in Manhattan and started providing their goods and services there as well, even though there is no association between Plaintiff's and Defendants' services.

26. As such, Consumers are likely to go to Defendants' events thinking that they are going to Plaintiffs' events and/or to events that are sponsored by and/or associated with Plaintiff. Defendants' acts would damage the goodwill associated with Plaintiff, as consumers may perceive lesser quality event hosted by Defendants and associate it with Plaintiff.

27. More than just a mere possibility, Plaintiff has in fact taken steps to expand outside of Brooklyn, to venues in locations all over the world, including, since March 2023, Manhattan. Indeed, Plaintiff's expansion would incorporate the location of the venue the same way it does with Brooklyn Mirage, i.e., Manhattan Mirage, Miami Mirage, Hollywood Mirage, etc.

28. On or about July 16, 2023, long after Plaintiff acquired rights in Plaintiff's Mark, Defendants acquired the domain name https://www.manhattanmirage.com ("Infringing Domain"), registered with Omnis Network, LLC, a California Limited Liability Company. The Infringing Domain includes the Infringing Mark. *See*, Exhibit B.

29. The Infringing Domain and Infringing Mark are confusingly similar to the Plaintiff's Mark and Website.

30. Furthermore, the Infringing Services are not associated or connected with Plaintiff, or licensed, authorized, sponsored, endorsed or approved by Plaintiff in any way.

31. The Infringing Services provided by Defendants are similar to and compete with the services provided by Plaintiff and target similar consumers.

32. Defendants' use of the confusingly similar name is likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that the services provided by Defendants is co-branded, authorized by, or in some manner associated with Plaintiff, when they are not. The likelihood of confusion, mistake and deception engendered by Defendants' misappropriation of Plaintiff's Mark is causing irreparable harm to the goodwill symbolized by the Plaintiff's Mark and the reputation for the quality of goods and services that they embody.

33. Defendants' use of the Infringing Domain and Infringing Mark was a purposeful attempt to impersonate and/or show an affiliation with Plaintiff, when no such association existed.

34. Upon information and belief, Defendants began providing services using the Infringing Mark in 2023, which is well after Plaintiff acquired rights in and to Plaintiff's Mark in 2015.

35. Additionally, given that Plaintiff is well known in the live event space, especially in New York, upon information and belief Defendants were aware of Plaintiff's Mark at the time they adopted and began use of the Infringing Mark and did so with the express intent of treading on the goodwill associated with Plaintiff's Mark.

36. On December 8, 2023, counsel for Plaintiff sent a cease-and-desist letter to Defendants, putting them on formal notice of Plaintiff's Mark and Defendants' infringement thereof. A true and correct copy of the December 8, 2023, cease and desist letter is attached hereto as **Exhibit C**.

37. After Defendant ignored the initial cease and desist letter, on January 18, 2024, counsel for Plaintiff sent a follow up cease-and-desist letter. A true and correct copy of the January 18, 2024, cease and desist letter is attached hereto as **Exhibit D**.

38. In a final act of good faith, on June 21, 2024, counsel for Plaintiff sent a final follow up cease-and-desist letter to Defendants. A true and correct copy of the June 21, 2024, cease and desist letter is attached hereto as **Exhibit E**.

39. Despite being on actual notice of their infringement, Defendants continue to infringe on Plaintiff's Mark in bad faith.

40. Defendants knowingly, willfully, and intentionally adopted and used confusingly similar trademarks as Plaintiff's Mark and Website, after becoming aware of the Plaintiff's rights in Plaintiff's Mark and Website.

41. Upon information and belief, Defendants' actions have been in violation of federal and state law governing trademark infringement and unfair competition, and have caused considerable harm to Plaintiff, including blurring of the Plaintiff's Mark, loss of control over its reputation and loss of goodwill for which Plaintiff is entitled to damages.

**FIRST CAUSE OF ACTION**
**(False Designation of Origin in Violation of 15 U.S.C. §1125(a))**

42. Plaintiff repeats allegations contained in paragraphs 1 through 41 above, as if fully set forth herein.

43. Plaintiff has used the Plaintiff's Mark in commerce in connection with Plaintiff's events and merchandise since 2015, and as such the Plaintiff's Mark has become associated with Plaintiff's goods and services, i.e., the social events hosted by Plaintiff and merchandise sold by Plaintiff.

44. Defendants had been using the Infringing Mark, in connection with identical services and goods as Plaintiff from 2023 to the present, which constitutes a false designation of origin and a false or misleading description and representation of fact in interstate commerce and upon information and belief, misled consumers to believe that the Defendants' goods and services, specifically through the Infringing Mark, were sponsored, approved or associated with Plaintiff.

45. Defendants intentionally and knowingly adopted and used a name, mark or false designation of origin likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the services and goods advertised, rendered, and sold by Defendants.

46. Indeed, the use of the Infringing Mark, which is substantially similar to Plaintiff's Mark, is likely to cause the consumers to confusingly believe that Plaintiff has opened up another venue in Manhattan and started providing their goods and services there as well, even though there is no association between Plaintiff's and Defendants' services. As such, Consumers are likely to go to Defendants' events thinking that they are going to Plaintiffs' events. Defendants' acts would damage the goodwill associated with Plaintiff, as consumers may perceive lesser quality event hosted by Defendants and associate it with Plaintiff.

47. By reason of the foregoing, the trade and public are likely to be and will continue to be confused, misled, or deceived, and Plaintiff has, is now, and will continue to suffer irreparable injury to its goodwill and reputation for which it has no adequate remedy at law.

48. By virtue of the foregoing, Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

49. Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial goodwill. The irreparable harm

to the Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

50. Defendants are using the Plaintiff's Mark willfully and with knowledge that said names are false, misleading and deceptive, and with the intent to unfairly compete with Plaintiff.

51. By reason of the foregoing, Plaintiff is entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1125(a) and 1117.

## SECOND CAUSE OF ACTION
(False Designation of Origin in Violation of 15 U.S.C. §1125(d))

52. Plaintiff repeats allegations contained in paragraphs 1 through 51 above, as if fully set forth herein.

53. Plaintiff has used the Plaintiff's Mark in its Website since March 21, 2007, nearly sixteen (16) years before July 2023, i.e., when the Defendants unlawfully registered and acquired their Infringing Domain.

54. Defendants had been using the Infringing Domain, in connection with nearly identical services and goods as Plaintiff from July 2023 to the present, which constitutes a false designation of origin and a false or misleading description and representation of fact in interstate commerce and upon information and belief, misled consumers to believe that the Defendants' goods and services, specifically through the Infringing Domain, were sponsored, approved or associated with Plaintiff.

55. Defendants intentionally and knowingly adopted and used a name, mark or false designation of origin likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the services and goods advertised, rendered, and sold by Defendants.

56. Indeed, the use of the Infringing Domain, which contains the Infringing Mark which is substantially similar to Plaintiff's Mark, is likely to cause the consumers to confusingly believe that Plaintiff has opened up another venue in Manhattan and started providing their goods and services there as well, even though there is no association between Plaintiff's and Defendants' services. As such, Consumers are likely to go to Defendants' events thinking that they are going to Plaintiffs' events. Defendants' acts would damage the goodwill associated with Plaintiff, as consumers may perceive lesser quality event hosted by Defendants and associate it with Plaintiff.

57. The trade and public are likely to be and will continue to be confused, misled, or deceived, and Plaintiff has, is now, and will continue to suffer irreparable injury to its goodwill and reputation for which it has no adequate remedy at law.

58. By virtue of the foregoing, Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(d).

59. Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial goodwill. The irreparable harm to the Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

60. Defendants are using the Plaintiff's Mark in the Infringing Domain willfully and with knowledge that said names are false, misleading and deceptive, and with the intent to unfairly compete with Plaintiff.

61. Further, Defendants have registered, trafficked, and used the domain name in the Infringing Domain as a result of registering the Website and have a bad faith intent to profit from the Plaintiff's Mark.

62. By reason of the foregoing, Plaintiff is entitled to a court order for the forfeiture and cancellation of the Infringing Domain under 15 U.S.C. §§1125(d)(C).

## THIRD CAUSE OF ACTION
### (New York Common Law Trademark Infringement)

63. Plaintiff repeats allegations contained in paragraphs 1 through 62 above, as if fully set forth herein.

64. Plaintiff has used the Plaintiff's Mark as in connection with Plaintiff's events and merchandise since 2015, and as such the Plaintiff's Mark has become associated with Plaintiff's goods and services, i.e., the social events hosted by Plaintiff and merchandise sold by Plaintiff.

65. Through Plaintiff's extensive and continuous use and publicity the Plaintiff's Mark have become well-known in New York and beyond and have earned tremendous goodwill among New Yorkers and among individuals located around the world.

66. Defendants' use of the Plaintiff's Mark, without the authorization or consent of Plaintiff, in connection with their services, constitutes a use in commerce that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Plaintiff's goods and services such that consumers may believe that Defendants' good and/or services are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Plaintiff.

67. Indeed, the use of the Infringing Mark, which is substantially similar to Plaintiff's Mark, is likely to cause the consumers to confusingly believe that Plaintiff has opened up another venue in Manhattan and started providing their goods and services there as well, even though there is no association between Plaintiff's and Defendants' services. As such, Consumers are likely to go to Defendants' events thinking that they are going to Plaintiffs' events and/or to events that are sponsored by and/or associated with Plaintiff. Defendants' acts would damage the goodwill

associated with Plaintiff, as consumers may perceive lesser quality event hosted by Defendants and associate it with Plaintiff.

68. More than just a mere possibility, Plaintiff has in fact taken steps to expand outside of Brooklyn, to venues in locations all over the world, including, since March 2023, Manhattan.

69. By virtue of the foregoing, Defendants have infringed and continue to infringe upon the Plaintiff's Mark.

70. Defendants intentionally and knowingly adopted and used a name, mark or false designation of origin likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the services and goods advertised, rendered, and sold by Defendants.

71. Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of lost sales of Plaintiff's events as a result of the consumer's confusion.

72. Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial goodwill. The irreparable harm to the Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

**FOURTH CAUSE OF ACTION**
**(Trademark Dilution by Blurring in Violation of New York General Business Law 360-I)**

73. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 72 above as though fully set forth herein.

74. Plaintiff has used the Plaintiff's Mark as in connection with Plaintiff's events and merchandise since 2015, and as such the Plaintiff's Mark has become associated with Plaintiff's goods and services, i.e., the social events hosted by Plaintiff and merchandise sold by Plaintiff. As a result, Plaintiff's Mark has become distinctive to the consumers as to the quality of events thrown by Plaintiff.

75. Upon information and belief, Defendants have infringed upon Plaintiff's Mark through various acts, such as its use of the Infringing Mark in interstate commerce.

76. Upon information and belief, the Infringing Mark is identical and/or substantially similar to the Plaintiff's Mark.

77. Upon information and belief, Defendants are utilizing the Infringing Mark in the same manner as Plaintiff utilizes the Mark, in that, like Plaintiff, Defendants are utilizing the Infringing Mark in connection with a venue to host social events.

78. Indeed, the use of the Infringing Mark, which is substantially similar to Plaintiff's Mark, is likely to cause the consumers to confusingly believe that Plaintiff has opened up another venue in Manhattan and started providing their goods and services there as well, even though there is no association between Plaintiff's and Defendants' services. As such, Consumers are likely to go to Defendants' events thinking that they are going to Plaintiffs' events. Defendants' acts would damage the goodwill associated with Plaintiff, as consumers may perceive lesser quality event hosted by Defendants and associate it with Plaintiff.

79. More than just a mere possibility, Plaintiff has in fact taken steps to expand outside of Brooklyn, to venues in locations all over the world, including, since March 2023, Manhattan. Indeed, Plaintiff's expansion would incorporate the location of the venue the same way it does with Brooklyn Mirage, i.e., Manhattan Mirage, Miami Mirage, Hollywood Mirage, etc.

80. Upon information and belief, Defendants' use of the Infringing Mark is likely to cause dilution of the Plaintiff's Mark by blurring and/or tarnishment, in that the association arising from Defendants' use of the Infringing Mark impairs the distinctiveness of Plaintiff's Mark.

15

81. Upon information and belief, Defendants are using the Infringing Mark willfully and with knowledge that they do not have the right to use said name, and with the intent to unfairly compete with Plaintiff, and benefit from the goodwill associated with the Plaintiff's Mark.

82. Upon information and belief, Defendants' acts constitute willful trademark dilution under N.Y. Gen. Bus. Law §360-l.

83. Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation, and loss of substantial consumer goodwill. This irreparable harm to Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

84. Upon information and belief, as a direct and proximate result of Defendants' willful conduct, pursuant to N.Y. Gen. Bus. Law §360-m, Plaintiff is entitled to injunctive relief and damages in the amount of three times Defendant's profits from their wrongful dilution and tarnishment of Plaintiff's Mark, and/or reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Common Law Unfair Competition)

85. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 84 above as though fully set forth herein.

86. Plaintiff has used the Plaintiff's Mark as in connection with Plaintiff's events and merchandise since 2015, and as such the Plaintiff's Mark has become associated with Plaintiff's goods and services, i.e., the social events hosted by Plaintiff and merchandise sold by Plaintiff.

87. Through Plaintiff's extensive and continuous use and publicity the Plaintiff's Mark have become well-known in New York and beyond and have earned tremendous goodwill among New Yorkers and among individuals located around the world.

88. Defendants' use of the Plaintiff's Mark, without the authorization or consent of Plaintiff, in connection with their services, constitutes a use in commerce that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Plaintiff's goods and services such that consumers may believe that Defendants' good and/or services are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Plaintiff.

89. Indeed, the use of the Infringing Mark, which is substantially similar to Plaintiff's Mark, is likely to cause the consumers to confusingly believe that Plaintiff has opened up another venue in Manhattan and started providing their goods and services there as well, even though there is no association between Plaintiff's and Defendants' services. As such, Consumers are likely to go to Defendants' events thinking that they are going to Plaintiffs' events. Defendants' acts would damage the goodwill associated with Plaintiff, as consumers may perceive lesser quality event hosted by Defendants and associate it with Plaintiff.

90. More than just a mere possibility, Plaintiff has in fact taken steps to expand outside of Brooklyn, to venues in locations all over the world, including, since March 2023, Manhattan. Indeed, Plaintiff's expansion would incorporate the location of the venue the same way it does with Brooklyn Mirage, i.e., Manhattan Mirage, Miami Mirage, Hollywood Mirage, etc.

91. Upon information and belief, Defendants adopted and used Infringing Mark as a trade name and trademark with the intent to trade off of the goodwill and reputation of the Plaintiff's Mark.

92. Upon information and belief, Defendants have infringed the Plaintiff's Mark as alleged herein with the intent to deceive the public into believing that services offered by Defendants are made by, approved by, sponsored by or affiliated with, Plaintiff.

93. Upon information and belief, Defendants' acts as alleged herein were committed with the intent to pass off and palm off Defendants' services as the services of Plaintiff, and with the intent to deceive and defraud the public.

94. Upon information and belief, Defendants adopted and continued to use the Infringing Mark with knowledge of Plaintiff's ownership of same. Despite this knowledge and the fact that Defendants could provide goods and services under another name, it decided instead to misappropriate the Plaintiff's Mark and use it as its own.

95. Upon information and belief, Plaintiff has been damaged by Defendants' afore-described acts in an amount to be determined at trial.

96. Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation, and loss of substantial consumer goodwill. This irreparable harm to Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues and claims properly triable of right by a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants as follows:

i. On the first cause of action, Plaintiff is entitled to an injunction restraining Defendants from ever using Plaintiff's Mark again and a judgment in an amount to be proven at trial, plus costs and attorney's fees;

ii. On the second cause of action, Plaintiff is entitled to a court order for the forfeiture and cancellation of the Infringing Domain under 15 U.S.C. §§1125(d)(C);

iii. On the third cause of action, Plaintiff is entitled to an injunction restraining

Defendants from ever using Plaintiffs Mark again and a judgment in an amount to be proven at trial, plus costs and attorney's fees;

iv. On the fourth cause of action, Plaintiff is entitled to an injunction restraining Defendants from ever using Plaintiffs Mark again and a judgment in an amount to be proven at trial, plus costs and attorney's fees;

v. On the fifth cause of action, Plaintiff is entitled to damages in an amount to be determined at trial;

vi. For Plaintiff's reasonable attorney's fees and costs in this action; and

vii. For such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 30, 2025

Respectfully submitted,

ADELMAN MATZ, P.C.

_____
Gary Adelman, Esq.
Sarah M. Matz, Esq.
1159 Second Ave, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: g@adelmanmatz.com
E-mail: sarah@adelmanmatz.com